IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTOINE L. J.,[1]                )
                                 )
            Plaintiff,           )
                                 )
vs.                              )  Case No. 18-cv-1028-CJP[2]
                                 )
COMMISSIONER of SOCIAL           )
SECURITY,                        )
                                 )
            Defendant.           )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for SSI benefits in May 2015, alleging disability as of June 1, 2014. Plaintiff subsequently amended the disability onset date in his application to May 6, 2015. After holding an evidentiary hearing, ALJ P. H. Jung denied the application on August 24, 2017. (Tr. 15-25). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1).

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 12.

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ did not adhere to 20 C.F.R. § 416.927 when he failed to accord adequate weight to the opinions of the claimant's treating physicians, Drs. Hussain, Brown, and Jamous.

## Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be

found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber

stamp for the Commissioner.  See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Jung followed the five-step analytical framework described above.  He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date.

The ALJ found that plaintiff had severe impairments of diabetes, peripheral vascular disease, chronic obstructive pulmonary disease, asthma, obesity, hypertension, mild spondylosis of the cervical spine, and osteoarthritis of the hips and knees.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the sedentary exertional level with some physical and mental limitations.  Based on the testimony of a VE, the ALJ concluded that plaintiff was not able to do his past work, but he was not disabled because he was able to do other jobs which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.  The following summary of the record is directed to the points raised by plaintiff.

1.   **Agency Forms**

Plaintiff was born in 1968 and was almost 47 years old on the alleged onset

date. (Tr. 151-152). He previously worked as a stockman, a molding operator, and a fast food cook. (Tr. 215). Plaintiff submitted a function report in August 2014 stating that he could not stand and walk for a long time. He could not bend or use his left arm. He had drowsiness and dizziness from his medications and had trouble dressing and grooming. He also could not complete daily household tasks. (Tr. 187-190).

### 2. Evidentiary Hearing

Plaintiff was 5'11" tall and weighed 236 pounds. (Tr. 36). He lived alone and family members assisted him with daily tasks. (Tr. 44-45). He had been covered by insurance since 2014. (Tr. 39).

Plaintiff said he could not work because of peripheral neuropathy, arthritis, shortness of breath, chronic migraine headaches, and inability to stand and walk for long periods. (Tr. 37-47). Plaintiff stated that he could walk half a block using a cane. (Tr. 47). He had difficulty with steps and had fallen numerous times. (Tr. 43-44).

A VE also testified. As there is no issue as to her testimony, it will not be summarized.

### 3. Medical Records

Plaintiff was seen by Dr. Abdulsalam Jamous, a pulmonologist, in 2014, 2015, and 2016. He was first seen by him on referral from Dr. Syed Hussain, his primary care provider. The first visit was in February 2014, over one year before

the alleged onset date. Plaintiff underwent pulmonary function testing and sleep testing. Dr. Jamous assessed him with small airway disease and shortness of breath suggestive of asthma, and prescribed ProAir. He also recommended weight reduction, saline nasal spray, snore guard, and positional therapy. (Tr. 233-248).

On October 12, 2015, Dr. Hussain diagnosed plaintiff with diabetes, hypertension, migraines, bilateral knee pain from arthritis, and neck pain. He also noted that plaintiff had a gait disturbance and memory impairment. (Tr. 359-364). In viewing plaintiff's cervical spine x-ray, Dr. Hussain further discovered that plaintiff suffered from mild cervical spondylosis from the C4-5 vertebra through C6-7 vertebra. (Tr. 493). An additional hip x-ray requested by Dr. Hussain due to plaintiff's left hip pain found degenerative osteoarthritic changes to the left hip. (Tr. 374-375).

That same year, Dr. Willie L. Brown, a podiatrist, assessed plaintiff with neuropathy, chronic moderate neuralgia, and chronic mild to moderate edema of the feet. He also had a fungal infection in his toenails and tinea pedis (athlete's foot). (Tr. 497, 500). Dr. Brown instructed plaintiff to limit his activity, lose weight, and wear foam padded insoles. (Tr. 501). Dr. Jamous noted improvement of plaintiff's lung defect because of his weight loss during this time, however, plaintiff still had shortness of breath. (Tr. 469-470).

On September 2, 2015, state medical examiner Dr. Sandra Tate diagnosed plaintiff with hip pain, bilateral lower back pain, and sensory neuropathy. (Tr. 349, 351-352). Dr. Tate concluded that plaintiff was restricted from bending at

the waist, squatting, kneeling, climbing stairs, and ladders; lifting more than 20 pounds; and standing or walking for more than one hour at a time and three hours total in a day. (Tr. 352). On November 14, 2015, state medical examiner Dr. Leigh Thomas reviewed petitioner's medical records and concluded that plaintiff was not disabled and could perform the functions of occupations that only require limited movement. (Tr. 75-76).

Dr. Hussain completed a form to assess plaintiff's ability to do work-related activities on December 14, 2016. He indicated that plaintiff frequently had pain so severe that it interfered with the attention and concentration requisite for simple work tasks. He also noted that plaintiff was incapable of performing even low stress jobs. He checked a box indicating that he could lift and carry up to 10 pounds only rarely. Plaintiff was limited to less than 2 hours total of standing and walking. He was limited to 2 hours total of sitting with the possible necessity of elevating his legs. He could never climb a ladder, squat, crouch, or stoop, and could rarely twist or climb stairs. Handling, feeling, and pushing/pulling were affected, but he did not say how they were affected or cite any medical findings. At the end of the form, Dr. Hussain wrote "Pt has multiple co-morbid medical conditions, required medications to keep them under control." (Tr. 530-533).

On December 28, 2016, Dr. Brown also completed a form to assess plaintiff's ability to do work-related activities. Dr. Brown concurred with Dr. Hussain on plaintiff's problems with attention and concentration due to pain and agreed that plaintiff could not even hold a low stress job. He could not lift and carry any

weight. He was limited to less than 2 hours of standing and walking, as well as sitting. He could never twist, stoop, crouch, squat, or climb. (Tr. 535-538).

Additionally, Dr. Jamous partially completed a form to assess plaintiff's ability to do work-related activities. Dr. Jamous diagnosed plaintiff with chronic airway obstruction and chronic bronchitis, then delineated his symptoms as shortness of breath and wheezing. He indicated that plaintiff occasionally had pain so severe that it interfered with the attention and concentration requisite for simple work tasks. (Tr. 477). The rest of the questionnaire was left blank, excluding Dr. Jamous' signature and a half illegible note next to the question regarding work stress tolerance. (Tr. 478-480).

## Analysis

Plaintiff argues that ALJ Jung did not adequately explain his rejection of Drs. Hussain, Brown, and Jamous' opinions in his written decision. A treating physician's opinion is entitled to "controlling weight" if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and if it is consistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). An ALJ who chooses to reject a treating physician's opinion must provide a good reason for the rejection. *Ibid.*

When an ALJ decides to favor another medical professional's opinion over that of a treating physician, the ALJ must provide an account of what weight the treating physician's opinion merits. 20 C.F.R. § 404.1527(c)(2)-(5); *Scott v.*

*Astrue,* 647 F.3d 734, 740 (7th Cir. 2011). Specifically, the ALJ must evaluate the opinion in light of (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. *Ibid.* The ALJ's decision failed to meet these requirements for rejecting the opinions of plaintiff's treating physicians.

The first and most damning deficiency in the ALJ's decision is that it wholly omitted any consideration of Dr. Jamous' opinion and, therefore, any merit it may contain. In defense of the ALJ's decision, the Commissioner dismissed Dr. Jamous' assessment, as reflected in the questionnaire he partially completed in November 2016, and characterized a response to a question therein about the ability of plaintiff to concentrate as an "unexplained squiggle." (Doc. 20 at 11). Dr. Jamous' assessment, however, addressed plaintiff's symptoms and some of his residual functional capacity and thus was relevant to several parts of the ALJ's analysis. Dr. Jamous assessed plaintiff with chronic airway obstruction and chronic bronchitis, then described his symptoms as shortness of breath and wheezing. He also indicated that plaintiff occasionally had pain so severe that it interfered with the attention and concentration required for simple work tasks. Simply stated, the ALJ completely ignored a treating physician's opinion without providing any reason and consequently, did not comply with the regulations and

well-established case law of this Circuit.

Furthermore, the ALJ's reasoning for rejecting Drs. Hussain and Browns' opinions is lacking at best. Those opinions, as reflected in the questionnaires they completed in December 2016, also shed light on the plaintiff's symptoms and his residual functional capacity and thus were relevant to several parts of the ALJ's analysis. Along with providing diagnoses and symptoms, both physicians agreed that plaintiff frequently had pain so severe that it interfered with the attention and concentration required for simple work tasks. They also both agreed that plaintiff was incapable of performing even low stress jobs. Then each physician went on the describe plaintiff's physical limitations in detail.

In response, the ALJ addressed their opinions with the exact same conclusory statement, saying that although both physicians had "a treating relationship with the claimant," their opinions were "inconsistent with the claimant's relatively normal physical examinations, mild objective findings, and wide range of daily activities." (Tr. 22-23). That's it. The ALJ never mentioned either physician's opinion again, nor did he adequately paint a full picture of either physician's opinion in relation to the residual functional capacity for a sedentary exertion level.

Additionally, the ALJ only cited to the treating physicians' opinions from December 2016 when there is a bevy of other notes in the record to support their assertions. It is true, as the Commissioner alludes to briefly, that the ALJ need not discuss every one of the physicians' treatment notes to fulfill his obligation to bridge

the evidence to his conclusion. Yet the ALJ must discuss at least some of the notes in a logical and reasonable way that demonstrates how they support his analysis. In so doing, he cannot ignore lines of evidence contrary to his conclusion and that is what happened here. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ cited only two questionnaires, each of which, when examined in full, do not support the conclusion he reaches, and he simultaneously disregarded significant evidence in other notes.

Moreover, although the ALJ spilled considerable ink detailing the opinions of state medical examiners Drs. Tate and Thomas, for which he assigned great weight, he did not use either opinion to support his decision to reject the treating physicians' opinions. *See* 20 C.F.R. § 416.927(c)(2); *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009). Furthermore, while the ALJ stated that plaintiff can occasionally balance, stoop, kneel, crouch, crawl, and climb ropes or stairs in one part of his decision, he also adopted Dr. Tate's opinion that states plaintiff was restricted from bending at the waist, squatting, kneeling, and climbing stairs or ladders on a permanent basis. (Tr. 18, 352). In sum, the ALJ cherry picked evidence that supported his finding, while ignoring other evidence that supported plaintiff's contention and even misquoting other evidence. The ALJ's decision does not allow this Court to conclude that he weighed the merits of any relevant medical opinion from a treating physician, much less engaged in the careful analysis required by the regulations and case law.

the evidence to his conclusion. Yet the ALJ must discuss at least some of the notes in a logical and reasonable way that demonstrates how they support his analysis. In so doing, he cannot ignore lines of evidence contrary to his conclusion and that is what happened here. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ cited only two questionnaires, each of which, when examined in full, do not support the conclusion he reaches, and he simultaneously disregarded significant evidence in other notes.

Moreover, although the ALJ spilled considerable ink detailing the opinions of state medical examiners Drs. Tate and Thomas, for which he assigned great weight, he did not use either opinion to support his decision to reject the treating physicians' opinions. *See* 20 C.F.R. § 416.927(c)(2); *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009). Furthermore, while the ALJ stated that plaintiff can occasionally balance, stoop, kneel, crouch, crawl, and climb ropes or stairs in one part of his decision, he also adopted Dr. Tate's opinion that states plaintiff was restricted from bending at the waist, squatting, kneeling, and climbing stairs or ladders on a permanent basis. (Tr. 18, 352). In sum, the ALJ cherry picked evidence that supported his finding, while ignoring other evidence that supported plaintiff's contention and even misquoting other evidence. The ALJ's decision does not allow this Court to conclude that he weighed the merits of any relevant medical opinion from a treating physician, much less engaged in the careful analysis required by the regulations and case law.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: February 13, 2019.**

>                s/ Clifford J. Proud
>                **CLIFFORD J. PROUD**
>                **UNITED STATES MAGISTRATE JUDGE**